Good morning everyone. Before we get started, I would like to welcome on behalf of Judge Roth and myself, Judge Jordan. Not that we need to welcome him to our circuit because he has been officially welcomed about a month ago when he was formally sworn in and had been previously sworn in. But this morning is Judge Jordan's first sitting as a member of our court. Ironically, for the judges who are on this panel, we just get chosen at lots. Judge Jordan was appointed and confirmed to replace Judge Roth on the court. That was a great idea. Even though he is replacing Judge Roth, Judge Roth remains. Despite what the newspapers may say, I am still working full time. Thank you very much. With that, we will call our first case. In the first case, Mr. Moskowitz. Sarnowski v. Air Brooke Good morning. Thank you. May it please the court, my name is Andrew Moskowitz. I represent the appellate, James Sarnowski. I am going to cede seven of my minutes to the Department of Labor, who is amicus status in this case, and also reserve one minute for rebuttal time. I would first note that in reviewing all the papers in the file in this case, I think that there is no dispute that both the defendant in his brief and the district court and the lower court acknowledge that Mr. Sarnowski had a serious heart condition. There was a great deal of objective medical evidence from medical records that was submitted demonstrating that this gentleman had a bypassed previous heart attack, had had a heart monitor installed, and literally, I think it was eight days after he was terminated, had a pacemaker put into his chest. I would say that there is not a dispute that Mr. Sarnowski has a heart condition, and accordingly, I would then submit that there is not a dispute that that would be an infirmity that would prevent the normal exercise of family function under the New Jersey law against discrimination. I believe the court's finding that expert testimony is needed is against the weight of precedent in this circuit, particularly the Taylor v. Phoenixville case, and I would also just submit, if the court had not so ruled, that it stands to reason that under the federal rules, a party is permitted to call a treating position without submitting expert testimony. Can I ask you a question about that? Your opponent at pages 19 and 20 talks about Gall v. AT&T and tries to distinguish that in saying that that was a two-part decision by the court there and that it doesn't really stand for what you say it stands for. Can you respond to their position in that regard? Well, let me pursue this just a little further. If I understand their position, I think what they're saying is somebody had to say that this heart condition constituted disability, and you didn't have anybody say that it was a disability within the meaning of the act. What's your take on that? My response to that is that that would not be permitted by a district court. Expert is not permitted to opine on legal standards. So what a treating position would do is they would basically confirm and amplify on the medical records and state that, yes, it's true, he went in for this treatment and this is what we found. Then it would be up to a jury or possibly the court to determine whether that met the standard of a disability under NJLAB. But that is not a determination that an expert can make because it's a question for the court. And your treating physician was prepared to say something about this condition limiting the normal exercise of a bodily function? That's correct. Yes, that's correct. It seems to me that, and looking at the district court's opinion in this case, that there is some confusion in that opinion. And I also see some what appears to be confusion in the respective briefs as to really what the LAD requires versus the Americans with Disabilities Act, what it requires, which really isn't an issue in this case. It's the LAD. Do you want to comment on that? And particularly, I wonder whether or not there is any evidence in the record at all that Eric Brooke was satisfied with your client's performance around the time of the termination, which under the LAD is one of the steps that has to be proven and something the district court didn't mention at all in its opinion. Well, that's good. It never reached that part. It doesn't need to reach that under the LAD? Well, it would need to reach it, but the burden that we have is very light, which is to demonstrate that he met the prima facie requirements. He was qualified and that he was performing his job. And you think you did that? I believe we did. In this case, we have a gentleman who began his job in July 2001. You have June 2001. The supervisor says his performance was great, in quotes, great. He received a raise and he had an excellent performance record. Right at the time that he, and I point out in my brief, there's a woman who was required to work these 20-hour shifts driving a bus. Right at the time that he complained about that, and that was in violation of federal regulations, right at the time that he complained about that was when the Airbrook limousine demonstrator decided that I think his performance was satisfactory and started to counsel him and gave him a written warning. So I think in this case you have, there's no question that this isn't someone who was there for two weeks. He was there for a period of time. He was performing his job. The time that he began raising complaints about the SEPA issues, about the violations of law, is when they determined that his performance was going downhill. And at that point he took, he had to take a leave of absence due to his bypass surgery. He came back and he found that his, he had less responsibility, he was treated differently, and he shortly thereafter was terminated. If we agree with you on the first point, the LAD, is there enough on the record for us to make a determination on this point as to whether his performance was satisfactory? Well, it wasn't, the question wasn't reached by the courts, by the lower courts. So I, you're hampered a little bit, but I think that in the record you have, as I said, basically that this is a gentleman who started his job and his performance was doing great. He got a raise and basically defended him when we gave him a written warning, things like that. But they didn't really point to anything specifically to demonstrate why his performance had somehow changed. Somehow he became a poor performer when previously he had been a very good performer. With regard to the SEPA claim, I think that the lower court basically, they focused on the flat tire and the stoplights, and so that's a minor issue. The first thing that I would point out, as I said in my brief, is that the lower court appeared to look at this case as though it were a public policy SEPA claim, and that's not the claim that we're bringing. We're bringing a 34-19-3-C-1 claim, which is a violation of, where someone objects to or refuses to participate in violation of a law, rule, or regulation. So it's not our, at that point, and there's case law from the Jersey Supreme Court to that effect, it's not our burden to show that he, in addition to violating the law, that somehow this is related to public policy. Those are two separate, they're C-1 and they're C-3. Our claim is a C-1 claim. In addition, I think that in terms of the temporal proximity issue that was brought up by the defendant in his opposition, in this situation you have this woman who started working there, she was working, as I said in my brief, she was working and basically was there for six months, was required to work excessive hours in violation of federal law. And right around that time, when my client was complaining about this and stating that it violated the law and it was an unsafe practice, was right around the time when they determined, well, his performance is going down, and they counseled him. So I think in that case, we have, for those other violations, we've demonstrated temporal proximity. I'm sorry to have that red light jump right from green, but I realize that we did not allow for the seven minutes that you would see into the amicus. Do you have something else to add on that point? If not, we'll bring you back for rebuttal and we'll hear from the Department of Labor. Thank you. Ms. McIntosh? Good morning. Good morning. May it please the Court, my name is Lynn McIntosh, and I'm appearing on behalf of the Secretary of Labor as amicus curiae and support repellent. On April 7, 2003, Mr. Cernowski told his supervisor that a recent cardiac catheterization test had diagnosed additional blocked arteries, and he would need to... You may want to just pull that microphone down a little closer to you. Thank you. Is that better? That's better. Okay, sorry. That he had been diagnosed with additional blocked arteries that he would need to continue seeing his doctor and was going to be wearing a heart monitor and may need additional leave for surgery. Airbrook was already well aware of Mr. Cernowski's heart condition, having recently granted him five weeks of FMLA-protected leave for quintuple bypass surgery. Mr. Cernowski made clear to Airbrook that he would need leave due to his heart condition. Now, did he really? I mean, from what you just recited in the beginning, that he may need further surgery, is that sufficient on a temporal basis to kick in the FMLA? Is that a sufficient notice that I may need... Your Honor, he said two things that day in addition to the notice of the heart monitor. He said that he would need to continue seeing his doctor, and indeed he said that he may need surgery. And clearly at that point in time, he had no way of knowing whether or not the surgery would in fact take place, and presumably that was part of the rationale for the heart monitor. But there was no way that Mr. Cernowski was going to get through this without needing additional leave due to a serious health condition. And any leave he took, regardless of whether it was only an hour for a doctor's appointment or a period of weeks for surgery and recovery, would be protected by the FMLA. Mr. Cernowski did precisely what he was supposed to do by providing his employer with as much notice as possible of his need for leave. There was nothing more he could have done to trigger the protections of the Act. And the District Court erred when it held that an employee must officially put in a request for a leave of absence in order to meet the notice requirements of the FMLA. Let me ask a question, and maybe I'm just repeating what Judge Roth asked, but the legal language of the regulation says notice sufficient to make the employer aware that the employee needs FMLA-qualifying leave. If an employee makes a conditional statement with a mail, like, it looks like this might happen, if I'm understanding you right, you're saying that's good enough, there's nothing else that needs to happen. Is that right? What I'm saying, Your Honor, is that you need to look at the context of what the employee has said, and that the ultimate determination of whether or not the employee has provided sufficient notice to the employer is based on the totality of those things, and not whether or not in the moment they choose to speak in a conditional in the future. Okay. And so what are the things that this Court should be thinking about in reviewing the District Court's decision and the record to say, yeah, Mr. Sarnofsky did, as you put it, everything he needed to do? I think what the Court should be looking at is what Airbrook knew about Mr. Sarnofsky's condition on April 7th, when he had this conversation, in addition to what he said during this conversation. And Airbrook was very well aware that he had recently had bypass surgery, and in this conversation became aware that he had additional blocked arteries, might need additional surgery, and most certainly would need to continue seeing his doctor. In fact, he was wearing a heart monitor. And I think it belies common sense to say that as Mr. Sarnofsky stood before his supervisor on the 7th, it's reasonable to assume that he would not need any leave related to his heart condition. Yes, but doesn't, as both Judge Roth and Judge Jordan now have asked you, this is not just a case, as you described it in your amicus brief, of trying to determine whether or not the notice is a sufficient official notice. Under the facts of this case, we could look at this to make a determination as to whether the policy considerations of the Family and Medical Leave Act are broad enough that they apply to somebody who says to their supervisor, I may need to take some leave, depending on what my doctors tell me. Is that consistent? Is the factual scenario in this case of I may need sufficient to meet the policy goals that Congress has set out under the Family and Medical Leave Act? Yes, Your Honor, it is sufficient. The Act itself talks about an employee stating their intention to take leave. The regulations discuss the anticipated need for leave. But is the intention different than may? We may be quarreling over some semantics here, but I think it would be a much stronger request for another six weeks versus him saying I may need, based on what else I hear, to take additional time off. Well, I agree. It would be a stronger case, but I think it's a very strong case as it stands because Mr. Sarnowski clearly stated that he would need to continue seeing his doctor, and that's undisputed. And as he stood before Airbrook, he was wearing a heart monitor, stated a continuing need to see his doctor. You can see doctors in the evening. You can see doctors on weekends. You can see doctors during the lunch hour. My understanding in reading the facts of this case is that it's not I'm going to have to see my doctor that created the need for leave. It was the statement I may need to have further surgery. I disagree. Excuse me. Whether or not he was talking about a potential need for surgery, I don't think related to the serious health condition would be protected under the FMLA. But if he did not see, as I've said, he doesn't necessarily have to see his doctor during office hours, during working hours. And there's nothing in the record to indicate that before he had been seeing his doctor during working hours. From reading the briefs, it was my understanding that the issue involved here was a need for further surgery. How exact does that proposition have to be? What's the rule that we ought to consider? What's the standard by which we ought to base whether a request for leave falls under the language of the FMLA? I believe what the courts need to consider are a variety of factors. The degree of certainty of the notice, the nearness of the predictive leave, and they need to be cognizant of what is the normal expected course of the condition. And while I agree that employees can, if they're fortunate, see their doctors outside of normal work hours, there's no indication that that was Mr. Sarnowski's case. And in fact, I believe in his deposition, he stated that he had gone for the cardiac catheterization and taken leave for it that week. Well, insofar as we're referring to the need for future surgery, how exact does that have to be? Does that have to be, well, I may need surgery, or I will need surgery, but I don't know when it will be, or I will need six weeks beginning on April 30th to have surgery? Where in that range of exactitude of the statement does the FMLA protection come into place? I think it clearly does not need to be a specific date if the employee does not, in fact, know the specific date. The need for leave, and when I say the need for leave, I don't just mean the surgery. I mean any leave related to the condition. The need for leave must be certain. It must be consistent with the nature of the condition, and it must be necessary for the employee to understand it. Is there a fact issue tied up in this at all related to the quality or the character of the notice? Below, Eric Brook disputed whether or not Mr. Sarnowski indeed said that he may need an additional six weeks for the surgery. They never disputed that he said he continued to need to see his doctor, and the district court accepted the statement that he may need the six weeks as part of the notice since it was on summary judgment. I guess what I'm asking more specifically is is there any aspect of notice, not necessarily speaking specifically to this case, but more generally, that is a jury issue? I mean, are the facts and circumstances of Mr. Sarnowski's condition and the notice and the things that Eric Brook knew, are those things that a jury would need to be thinking about in deciding whether this statement I may need some more time constituted notice? Or is that strictly a legal question, notice, not notice, no fact issues? It's the department's position that based on the undisputed facts of Mr. Sarnowski's notice, he stated a permafascia case to go forward. Clearly notice is a very fact-dependent determination and frequently is appropriate for a jury, but there are certainly cases in which the notice is either sufficiently clear or sufficiently deficient that it can be determined as a matter of law. Okay. Thank you, Ms. McIntosh. Thank you. Mr. Kovacs. Good morning. May it please the court, Kevin Kovacs, I represent the appellee, Eric Brook. Starting with the family medical lead back, I think the court recognizes that the statute and the regulations under the statute do not specifically expressly give us a situation here where a man has a health condition and he says, I may, allegedly, we do dispute that he said that, but for the purposes today, he said I may need leave. I may not need leave. That is a broad, to provide the protection of the act to every employee who says I may need leave down the road would be a broad expansion of the statute. And with all due respect to the court, I think if the Department of Labor thinks that something like this is appropriate, so we can get some better parameters as to what that right entails. Hold on just a minute, Mr. Kovacs. Why don't you speak, if you would, to the point made by the Department of Labor's counsel that it's not just the words, it's the circumstances, that when you have an employee who's just been out for quintuple bypass surgery standing in front of you with a heart monitor on and you think that any sensible employer looking at that employee is going to get it, I need time, and that that's enough, that you don't need rulemaking to make the obvious more obvious. That's the position I hear them saying. Why don't you speak to that? Well, Your Honor, that can apply to someone who has a bad back who had back surgery years ago or months ago. I don't know if you've heard  and she was on the road. I submit that that's not sufficient under the statute, and all of the cases that we've looked at that have been cited here go beyond that I may need help. The depression again situation, the woman was out, she called in sick that day. Those circumstances were sufficient. She'd been out before for depression, she's out again. If I do specifically need leave, I don't know when, I'll do it in the fall when there's less work, when you're less busy. Those are the kinds of parameters that are sufficient to provide notice. So does it turn on may? Is that the position of your client that if he'd said will instead of may, this would be a totally different case? Well, if he had said I will need leave, then the act would be triggered and a tax kick would come in as to whether or not that's accurate, whether he does need leave. But if he says I will need leave, then yes, that triggers the act. Not that I may, I may not. Well, if under the circumstances of the case and as the Department of Labor concedes in its brief, if he was fired for other reasons, if he was fired for not doing his job well, then the FMLA does not protect him. But if he says, I'm really concerned, I may need another six weeks leave and he's fired the next day and there's no other reason to fire him, would the FMLA protect him? I would suggest not because, again, he has not specifically put them on notice of the need for leave. I don't know if that answers your question. Then why was he fired? Well, we give a whole host of reasons. Well, I'm not talking about a hypothetical plaintiff who there is absolutely no other reason to fire him. He's doing a wonderful job. The employer acknowledges he's doing a wonderful job. He says, I'm concerned because I just may need some more leave and he's fired the next day. I would suggest still it does not trigger the act. This goes to the policy issues that were discussed by the Department of Labor in our brief. I may need some time off down the road. He's going to get fired the next day because a good employee who may need some time down the road, oh, we just can't have that. Yeah, but the employer is thinking, well, I need consistency. If he's not going to be around, let's get rid of him and get someone else in who I can depend upon. Again, we don't know. I just think this so broadly expands the act to everybody who has any kind of health condition that I may need some more time. Once I may. Well, that's not really this case. Let's do take it back to this case for a second. Under the standards that summary judgment imposes upon us, which is to draw every inference in favor of your opponent. We look at the record and say he's got reviews that say he's doing a great job. We draw inferences in his favor that he's doing a great job. He says on the heels of quintuple bypass surgery, as you hypothesized walking the first day saying Sunday, maybe for some condition I might. This is in that specific context in which we're required to draw every inference in favor of him. Let's go back to that specific context. He's out of work in October of 2002 for the surgery. They bring him back. His supervisor at the time, Mr. McDonough, who's here, also had triple or quadruple bypass surgery and had come back to work. They brought the man back to work. Then two months later, or three months later, December 23, 2002, this is A105, they gave him a performance evaluation that set forth very specifically the problems they were having with his performance over the last few months. He continued to work. Then it was another four months later  according to our position, his performance had continued to deteriorate over that period of time and we're still waiting on the evidence and to see witnesses and decide whether they thought the statements that are made by your client about his performance are credible or not or whether they're just sort of window dressing to make sure when they can for taking leave. I would still go back to the position that the FMLA does not extend to people who may need to leave down the road. So it's back to May. I'm going to go back to discrimination if I could for a moment. One of the questions you asked, Judge Jordan, is what would the treating doctor testify to and I was surprised when the answer to your question could the treating doctor give an opinion that his situation limited bodily functions which is the definition. Well, that's exactly not what a treating doctor could testify to without a report, giving an expert opinion. What we have here is a situation where we have a number of disabled workers and that alone does not equate every serious illness or condition does not equate to a handicap, a disability under the act. What we would need here is the treating doctor could come in if there was really a dispute and testify, I treated this man, he had bypass surgery, he had continued block arteries. That's the condition, that's his diagnosis. He went to the hospital, went out and looked for work, went out on employment and because of a bleep in the monitor a week or two weeks later he had to go in for surgery. He then went back to work in September of 2003 and through the end of this case in discovery at least he continued to work. He had a new job and continued to work. So every serious illness does not equate to a disability. This is a handicap, this is long term, may need accommodations down the road. Now that's the kind of expert opinion that says he's disabled. When you get to trial isn't it a matter of wait? If the plaintiff comes in with his treating physician who says my dear old client Joe this heart condition I'm telling him he better not go back to work. If you as the defendant know that evidence is going to come up you're going to get an expert witness who's going to say yes I understand how this heart condition affects the mental and physical ability to do this job and I have examined the plaintiff and I can say without any doubt that he is not disabled and that he can do the job and the fact that he wants to retire to Florida and play golf I think is a bigger factor in this case than his physical condition. And then you argue to the jury oh plaintiff Joe's dear old family doctor he's just an old fuddy-duddy who doesn't know what he's talking about and he is helping out his good old friend Joe whereas here I've got my board certified expert who has revealed not only that this man is not disabled but his ulterior motive in doing what he's doing and then the jury decides on the basis of that information whether the law applies or not but as long as the treating physician knows that the plaintiff's condition isn't that sufficient at least to get to the jury? No, because the treating physician can say what we all agree to here and that is that the man had treatment for a heart condition. Every serious illness though does not necessarily mean a disability. An employee could have a temporary health impairment goes in and gets treated and is fine after that. That does not mean that that person is disabled. The treating physician can testify as experts no question about it. They don't have to be fact witnesses and limit it to fact witness patterns but in this instance we had no report from the doctor giving any expert opinions. He did not provide an expert opinion that says this is the treatment I did these are the conditions I diagnosed which is his fact witness role but in my opinion with a reasonable degree of medical certainty these are the impairments that will cause the patient affect him that will limit his bodily functions this is why it's chronic this is why it's a disability. That is what we don't have and that is what was necessary here. Otherwise every serious condition be it temporary, be it cured tomorrow becomes a disability under the act and that is not what is intended by the statute. So your position is not that the treating physician can't be an expert but this treating physician did not give sufficient explanation. Exactly. He did not testify as to facts. He was not going to give any opinion that this was a bodily limitation disability. If he had given a report that said those things then we would get an expert perhaps to say something different and then we go to the jury on that issue but we didn't get there because he has a condition that doesn't mean he's handicapped under the act. You seem to point in your brief page 13 in your brief you try to equate the LAD to the Americans with Disabilities Act. You reference the Americans with Disabilities Act when you say having undergone bypass surgery or having heart disease does not per se render someone disabled under the Americans with Disabilities Act. I guess my question is isn't the LAD much broader than the ADA? Forget that case. You didn't mean to put that way. I wasn't relying on that case to say it's not a permanent condition under the LAD because it is a different statute but under the LAD you still have a definition of handicap in the act a definition of handicap in the act that has to be met and simply being ill, being sick does not make you disabled. Turning to SIPA Can I ask you a question before you leave that one last one? I think I know your answer but I'd still like you to respond to this. Is there ever a case where a jury without the step of an expert with a report or a physician records and testimony and say you know what it's true they don't have an expert in here but this person is a paraplegic I don't really need an expert to come in and say there's a bodily function problem here it's good enough for me I see him in the wheelchair Absolutely you don't need an expert in a situation like that it's not apparent that's the language I think the district court used that was the language of the Close case where he had an alcoholic drug abuse problem That's a good point so I guess my question to you more precisely is is there a case where something may not be physically apparent by looking at somebody but on the basis of the background information that you receive a jury could draw the conclusion you know what if you've had three or four bypasses sounds like a limitation on a bodily function to me You're making a little jump there by saying he needs another three or four bypass surgeries or something down the road because now you're getting into a doctor who's going to give an expert opinion on prognosis and permanency but set aside Assume for the sake of discussion that that's in the treating physician's statements and records or the purview of what you're saying I have a problem with the hypothetical because it is encompassing some expert prognosis in it regardless of what's in the notes but I think there may be circumstances that would fit what you're saying Judge but nothing really comes to mind I think if the person is doing their job and has never asked for an accommodation and doesn't appear to be impaired or disabled in any way or have any bodily limitations in any way I think for that person to be able to come on and say that they're disabled under the act we may need an expert opinion to say that and to give the parameters of what those limitations are You wanted to talk about SEPA I have six seconds Why don't you give your SEPA argument briefly Just very briefly You have more than six seconds The case here is we have a gentleman who claims six months ago or six months earlier in October he had made some complaints about drivers not turning in forms and that was his responsibility to oversee that When that responsibility was given back to the dispatch manager who tied those forms to assignments it was taken care of The drivers then, according to the record began to give their forms and it was no longer his responsibility He also complained allegedly about drivers working too much time after surgery where he was complaining specifically about one woman who didn't work there after November and she was relying on some forms that weren't even official Airbrook forms Dispatch manager takes over six months go by and now we're into an area where he says there's a dispute over the need of a tag wheel I don't want to go into details about this or need of lights being on and he's overruled by the dispatch manager and the driver on the scene and the dispute among co-workers does not trigger a whistleblowing activity and this is, in my view just another throwing something up there hoping that this is the reason But going back to something you would ask Judge Fischer did he otherwise qualify under CEQA or any of these statutes to continue was he reasonably performing his job duties which under McDonnell Douglas we'd look at first in the first prong as a prima facie case but secondly were there other reasons and again I submit that we provided evidence that he wasn't performing his job in a reasonably good manner as evidenced by the review that was provided to him in December 2002 by the counsel that was given to him by his employer and it would be our position although the district court didn't reach it that if the district court did not reach it then there would be no point in the case to continue. Thank you. With regard to the lab claim it's very clear that it is not limited one of the cases said the Holt Mamed and Disabled The Anderson case is not limited to so-called severe disabilities we have a case law which indicates in VISC it's applied to obesity in the Pelton Division case in New Jersey it's applied to mastectomy for someone with mastectomy who's cancer free clearly in this case we've demonstrated that there's a limitation on bodily function this is not someone who hurt their back and maybe they have to go to a doctor this is someone in my expert in matter of my reasoned medical opinion this man is disabled Judge respectfully the treating physician is not required to do that that's a determination that's made by the jury when they're instructed by the district court that's not a determination the treating physician is not permitted to reach that ultimate question this gentleman had a coronary angiography he revealed four blocked arteries they put a heart monitor on him you don't put a heart monitor on someone who's healthy a lot of people who have had heart problems go back to work and are able to work how does the jury determine in this range of a particular disease what is disabled and what is not disabled to understand how the condition is disabled Judge what I would point out we're not claiming he couldn't do the job we're saying he was disabled it's not a reasonable accommodation case we're not saying he couldn't do the job we're merely saying he had a disability and nevertheless could do the job so we're not claiming that it prevented him to such a degree we're not saying he was disabled but he was able to do the you can be disabled and still be able to do your job if you're disabled and can still do your job how do you recover from your employee because your employer discriminates against you based on your disability then you're saying that the employer thought he was disabled when he wasn't disabled he was disabled but it's not a situation where you can be disabled and still be able to do the job it's just a situation where you're treated differently than employees who don't have disabilities and you're saying that this is evidenced in the limitation of his responsibilities after the surgery well that and the fact that they terminated him if that was indeed just very quickly if I could with regard to your red lights on thank you thank you the case was very well argued we'll take the matter under advisement thank you